## WISHART *v.* THE JOS. NIXON.

*(District Court, W. D. Pennsylvania. October 28, 1890.)*

**MARITIME CONTRACTS—CARE OF VESSEL AT PIER—LIENS BY STATE LAWS.**

The libelant, late master of a tow-boat, at the end of a trip was hired to take exclusive custody and care of the boat while she remained moored at Pittsburgh, her home port, and to put and keep her in good order, and fit to proceed on an anticipated voyage, which he did. He necessarily remained on board the boat day and night. It was necessary to move the boat into shore and out therefrom as the river rose and fell, and the chief perils to which the boat was exposed, and from which she was to be protected by the libelant, were perils of the river. *Held,* that the contract and the services actually rendered by the libelant were maritime, and that the lien for his wages against the boat, given by the state statute, was enforceable *in rem* in admiralty.

In Admiralty.

*Geo. W. Acklin*, for libelant.

*Geo. C. Wilson* and *David S. McCann*, for respondent.

ACHESON, J. Although the libelant's services on the Nixon were rendered at her home port, yet it is very clear that he has a lien against the boat for his wages by virtue of the Pennsylvania act of April 20, 1858, relating to vessels navigating the rivers Allegheny, Monongahela, and Ohio. 1 Purd. Dig. 126. The debatable question is whether the libelant's services were performed under a maritime contract, or were of a maritime character, so as to give him a right to sue *in rem* in admiralty, agreeably to the practice sanctioned by the cases of *Peyroux* v. *Howard*, 7 Pet. 324, and *The Lottawanna*, 21 Wall. 558. The libelant was called a "watchman," but he was much more; and indeed his services went far beyond those of an ordinary ship-keeper.

I find the material facts of the case to be these: The Nixon is a steam tow-boat. In November, 1889, upon the termination of a trip, the boat was moored in the Monongahela river, at the public wharf in the port of Pittsburgh, awaiting anticipated employment. The libelant, who is

a river man of many years' experience, and had just made a trip on the Nixon as master, was employed by her owner to take exclusive custody and care of the boat while she remained in port, and to exercise general supervision over her, putting and keeping her in good order, and in readiness to proceed on an expected trip, when the libelant was again to act as her master. A boat lying where the Nixon was must be moved in against the shore and out therefrom as the river rises and falls; otherwise, in times of freshets she is liable, on the one hand, to be struck and damaged by floating objects, or, on the other, to get aground as the water recedes; and she is also to be protected from the movements of other vessels coming in and going out. It is therefore necessary to have a proper person on board a boat so situated to guard her against these dangers, and to that end the libelant was kept on the Nixon, and he served the boat in the manner just indicated. In the performance of his duties it was incumbent on the libelant to remain aboard the boat day and night, and this he did during the time covered by his claim. There was a great deal of high water during the period of the libelant's service, and much of the time he kept up steam in the nigger boiler to meet emergencies, and he used steam in sparring the boat. Moreover, the libelant overhauled and repaired all the lines and rigging, mended broken chains, lowered and painted the chimneys, oiled the machinery, kept the pipes connected with the boilers drained, to prevent their bursting in freezing weather, had some other needed repairs about the boat made, and assisted in making them, and generally did whatever was necessary to get and keep the boat in good order, and in a fit condition to proceed upon a voyage when called on; and all this was within the scope of the contract of hiring. While the boat was in the custody of the libelant, her license expired, and, by direction of the owner, the libelant had her boilers officially inspected; he preparing the boat for the inspection, and personally giving the required aid when the tests were made by the local inspector, and in the new papers the libelant was named as master.

Now, in view of the facts shown, it seems to me that the contract here was essentially maritime, and that the services actually rendered by the libelant were nautical. The contract related to a vessel afloat and about to proceed on a voyage, and it concerned not only her preservation from marine dangers, but her reparation, and the fitting of her for navigation. The libelant's services directly promoted all those objects. The principal dangers to which the boat was exposed, and from which she was to be protected, were perils of the river. The services in that regard here rendered were not those of a landsman. They could be performed properly by a mariner only. It is settled that a claim for wharfage is cognizable in admiralty. *Ex parte Easton*, 95 U. S. 68. But if the contract of a wharfinger is maritime, why not such a contract as the one involved here? Again, we find it decided in *Leathers* v. *Blessing*, 105 U. S. 626, 629, that the fact that a vessel had completed her voyage, and was securely moored to the wharf where her cargo was about to be discharged, and had communication with the shore by a gang-plank, did not deprive her of the character of a water-borne vessel, or oust the jurisdiction in

admiralty over a tort there committed on her. Upon the question of jurisdiction, then, my judgment is with the libelant.

This conclusion by no means conflicts with the ruling of this court in *McGinnis* v. *The Grand Turk*, 2 Pitts. R. 326, or the decision of the district court of the eastern district of Pennsylvania in the case of *The E. A. Barnard*, 2 Fed. Rep. 712. The ruling in the latter case was that a watchman and ship-keeper had no lien, under the general maritime law, for services rendered at the home port of the vessel; and this really was the point decided in the case of *The Grand Turk*. Moreover, there the boat was laid up for repairs at the marine railway, and the service of the watchman was but the work of a landsman. But here there is a statutory lien, and the special facts of the case distinguish it from the cases upon which the respondent relies.

Touching the merits of the controversy, I deem it unnecessary to recite or discuss the proofs. It is sufficient to say that, upon a careful consideration of all the evidence, I am of the opinion that the defenses based on the alleged negligence and misconduct of the libelant are not made out, and I think the libelant is justly entitled to recover the full amount of his claim. Let a decree be drawn in favor of the libelant for the amount of his claim, with interest from date of suit, and costs.