In the Matter of the Claim of JESSIE I. McKINNON and Others, Respondents, against THE KINSMAN TRANSIT COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 15, 1934.

*Wallace H. Miller*, for the appellants.

*John J. Bennett, Jr., Attorney-General* [*John R. O'Hanlon, Assistant Attorney-General*, of counsel], for the respondents.

PER CURIAM. The case under the Workmen's Compensation Law is based on a contract of employment, and, therefore, the character of the contract must determine whether it comes within admiralty jurisdiction or the Workmen's Compensation Law.

The ship was of 6,000 tons burden, and within the Federal act. It was lying in Buffalo harbor, which is navigable water. It was moored at the breakwall, in twenty-five feet of water, nearly a half a mile from shore, and could only be reached by use of a boat over the waters of the harbor. The ship was engaged in foreign commerce, and had left Ontario in Canada for Buffalo in New York. But it was still in the stream and had not reached its destination. It was loaded with a cargo to be delivered at the dock in Buffalo, and the cargo was delivered subsequent to the accident.

Thus we have a ship carrying a cargo of foreign commerce anchored in the harbor in navigable water, with its cargo still on board.

The deceased was called a shipkeeper, which is a good name, but a vague one. His interest and duties apparently reached to everything that concerned the ship and its cargo, and its uncom-

pleted voyage. He was a watchman in the ordinary sense of that term, but he was much more. He was called upon to take soundings because the depths were uncertain; he was to guard against leaks in various parts of the ship, to make sure of its safety in deep waters, and to make report of his findings. He was to keep the hatches tight, clear away snow, prevent the collection of water on the decks, and thus keep dry and preserve the cargo from destruction by the elements or defects in the ship.

These are not the duties of a watchman but the duties of one whose business is to insure the ship a safe voyage, and to land her in good condition at the dock; so her cargo may be discharged uninjured. In a word, his duties had for their purpose the safe landing of the cargo, so that the ship could earn the freight agreed upon. That is all that a freighter is intended for; and those who constitute the crew, when leaving the foreign port and approaching destination, do no more. Their object is to dock the ship in safety and discharge its cargo unimpaired, and earn the freight, out of which comes the cost of the vessel, its repairs, the profits of the owner, and the wages of those who take part in the voyage.

Decedent's work was of a maritime nature and had direct relation to navigation. (*Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 id. 469; *Matter of Reinhardt* v. *Newport F. S. Corp.*, 232 N. Y. 115; *Matter of Doey* v. *Howland Co.*, 224 id. 30; *McNamara* v. *McHarg, Barton Co.*, 200 App. Div. 188; *Norman* v. *Merritt & Chapman Derrick & Wrecking Co.*, Id. 360.) Such being his employment, the jurisdiction of the admiralty excludes the jurisdiction of the Workmen's Compensation Commission. (*Washington* v. *Dawson & Co.*, 264 U. S. 219; *Knickerbocker Ice Co.* v. *Stewart*, 253 id. 149; *Southern Pacific Co.* v. *Jensen*, 244 id. 205.)

The award should be reversed and the claim dismissed.

HILL, P. J., McNAMEE and HEFFERNAN, JJ., concur; RHODES and CRAPSER, JJ., dissent and vote to affirm on the ground the presumption is that the case comes within the Workmen's Compensation Law; that the burden is upon the employer to establish to the contrary; that the proof does not disclose whether the contract of carriage by the vessel, maritime in its nature, had terminated and had become a contract of storage. (See *The Richard Winslow*, 71 Fed. 426.) In the absence of this proof the employer has failed to establish facts to overcome the presumption of the statute. The case of *Seneca Washed Gravel Corp.* v. *McManigal* (65 F. [2d] 779) would be in point were it not for the fact that the question here under consideration does not appear

to have been raised in that case; also upon the further grounds that the deceased was, at the time of his death, doing work of a nature which had no direct relation to navigation or commerce, and permitted application of the State's compensation act because it would work no general prejudice to the essential features of the maritime law. (*Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469.) The expression "maritime character or nature" is held to mean any act which contributes to the navigation of the vessel presently or prospectively. The contract of employment by deceased was not to be performed concerning the ship during navigation or preparation for navigation, or involved within maritime matters. (*Riedel* v. *Mallory Steamship Co.*, 196 App. Div. 794; *Williams* v. *The Sirius*, 65 Fed. 226.)

Award reversed and claim dismissed, with costs against the State Industrial Board.