BERTHA ST. JOHN *v.* J. J. AND M. K. THOMSON ET AL.

November Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON and SHERBURNE, JJ.

Opinion filed January 7, 1936.

*Warren R. Austin, Jr.,* and *William H. Edmunds* for the defendants.

*Willsie E. Brisbin, Charles F. Black,* and *J. Boone Wilson* for the claimant.

POWERS, C. J. This is an appeal from an award of the commissioner of industries, whereby the defendants were ordered to pay compensation to the plaintiff for the accidental death of her husband, Leon St. John. Of the questions certified to this Court, only the following are insisted upon:

3. Under the facts found by the commissioner, did the accident and employment come under the jurisdiction of the admiralty, and thereby exclude the jurisdiction of the commissioner?

4. Is the claimant entitled to compensation and burial expenses as provided by the Workmen's Compensation Law?

It is quite apparent that if the first of these questions is to be answered in the affirmative, the last one must be answered in the negative; and if the first one is to be answered in the negative, the last one must be answered in the affirmative. It is all a question of the existence and extent of maritime jurisdiction.

The findings of the commissioner show that the Thomsons, husband and wife, were residents of Mt. Vernon, N. Y. They spent a part of the summer of 1934 at the Champlain Club, a summer resort on Lake Champlain, in the town of Colchester, Vt. There they had and used an automobile and a twenty-six-foot motor boat, which was registered and numbered under the federal law, and was used for pleasure only. While in this State, they employed the St. Johns, Mrs. St. John to serve as maid, and Mr. St. John to serve as chauffeur and to do what was required of him with regard to the boat. He was not a skilled seaman, but was engaged to and did care for the boat, accompany his employers around the lake for fishing and other purposes, raise and lower the anchor, bring the boat to the wharf, and take it back to its mooring, and act as handy man around it—all as and when directed by the Thomsons. On July 6, 1934, the Thomsons, with two guests and accompanied by St. John, set out in the boat from the Champlain Club bound for South Hero. Before they reached their destination, the propeller shaft of the boat broke, and of course the boat was wholly disabled. The party paddled the craft to the Vermont shore, a rowboat was procured, and in it Mrs. Thomson went ashore and summoned help. She then returned to the motor boat in the rowboat. As she stepped aboard the former, she handed the painter of the latter to St. John to be made fast to the motor boat. A

little later it was discovered that the rowboat was not so attached and was drifting away. St. John dove overboard in an attempt to retrieve it and was drowned.

When he engaged with the Thomsons, he was informed by Thomson that he, Thomson, was insured under the Workmen's Compensation Law of Vermont. But it turns out that Thomson, who employed less than ten persons, had never notified the commissioner of his intention to operate under that act, as provided in P. L. 6502, though he had taken out insurance with the corporate defendant, and had filed a copy of his policy with the commissioner as required by P. L. 6562.

St. John's contract bound him to serve on the motor boat when so directed by the Thomsons, and to perform thereon such tasks as might reasonably be required of him. To this extent, his engagement was maritime in character, for it is admitted that Lake Champlain is a part of the navigable waters of the United States, and that the maritime jurisdiction granted to the federal government and its courts by the Constitution and statutes of the United States applies to it. It is also admitted that in the determination of the question whether or not a contract is maritime, the true test is the subject matter of the contract—"the nature and character of the work to be done." It is evident that St. John was engaged in maritime service when he lost his life. His immediate effort was being exerted to retrieve the rowboat. But this was an incident of a larger undertaking, which was to repair the boat and make her capable of continuing on her way. To this result, the rowboat was an important if not a necessary adjunct. As stated above, a repair man had been summoned. The use of the rowboat was the only feasible means of getting him from the shore to the craft, or of getting the party from the craft to the shore, if that became necessary. Not only their convenience was, but their safety might become, dependent upon it.

It is urged by the claimant that inasmuch as St. John's duties were predominantly on shore, his unimportant duties afloat should be disregarded and not allowed to characterize his contract of employment at all. This position is untenable. *Northern Coal & Dock Co.* v. *Strand*, 278 U. S. 142, 73 L. ed. 232, 49 Sup. Ct. 88, involved the accidental death of Charles Strand while working as a stevedore on a vessel lying in navi-

gable waters. His employment contemplated that he should work on both land and water, as directed. In fact, the time spent in work aboard ship amounted to only two per cent of his working time. "The fact," says Mr. Justice McReynolds, speaking for a majority of the court, "that Strand worked for a major portion of the time upon land is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred." It was held that his rights were to be determined by maritime law. Mr. Justice Stone wrote an opinion with which Mr. Justice Holmes and Mr. Justice Brandeis concurred, in which he contended that Strand's employment being essentially nonmaritime, and the State compensation act being a term of his contract, his rights should not be controlled by maritime law. The very fact that the minority took this view shows that the majority wholly rejected it.

Prior to the announcement on May 21, 1917, of *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 61 L. ed. 1086, 37 Sup. Ct. 524, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, it was generally understood, and so held by the state courts, that workmen's compensation acts applied to maritime contracts and torts. But that case held otherwise. Jensen was the employee of the Southern Pacific Co., a corporation engaged as a common carrier by railroad. It also owned and operated a steamboat. While this boat was berthed at a pier in the North River and lying in navigable waters of the United States, Jensen was operating an electric truck in aid of the work of unloading the cargo of the boat. He would drive the truck into the ship, where it would be loaded with lumber from the cargo, then he would drive out of the vessel upon a gangway connecting the vessel with the pier, and thence upon the pier, where the lumber was unloaded from the truck. Pursuant to this custom, he started out of the ship with his truck loaded with lumber. He stood on the rear of the truck with the lumber piled thereon about shoulder high. In driving out, his truck became jammed against the guide pieces on the gangway. He reversed his power and backed into the hatchway. As he did so, his head struck a part of the ship, causing his chin to hit the lumber on the truck, and he received injuries from which he died. A dependent widow made a claim for compensation under a New York statute. An award was made which was approved by the

appellate division (*In re Southern Pac. Co.* [*In re Jensen*], 167 App. Div. 945, 152 N. Y. S. 1120) and affirmed by the court of appeals (*Jensen* v. *Southern Pac. Co.*, 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276), on the ground that the state statute applied and that it was not obnoxious to the federal constitution. But the Supreme Court of the United States reversed this judgment. The case was carefully and thoroughly briefed, and a brief was filed for the New York Industrial Commission and another by Christopher M. Bradley, as *amicus curiae*. It was twice argued before the Court. Mr. Justice McReynolds, speaking for the court, said: "The work of a stevedore, in which the deceased was engaged, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction. * * * If New York can subject foreign ships coming into her ports to such obligations as those imposed by her Compensation Statute, other states may do likewise. The necessary consequence would be destructive of the very uniformity in respect to maritime matters which the Constitution was designed to establish. * * * Exclusive jurisdiction of all civil cases in admiralty and maritime jurisdiction is vested in the federal district courts, 'saving to suitors in all cases the right of a common law remedy when the common law is competent to give it.' The remedy which the Compensation Statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court, and is not saved to suitors from the grant of exclusive jurisdiction." Mr. Justice Holmes filed a dissenting opinion in which he characterizes the fear of a lack of uniformity as a "specter," and Mr. Justice Pitney filed an elaborate and carefully prepared dissenting opinion—with both of which, Mr. Justice Brandeis and Mr. Justice Clark agreed.

This case is one of the five to four decisions of the Supreme Court. This very fact gives assurance that it was carefully studied and considered. The conclusions of the majority, are, of course, until modified or reversed, the law of the land and entitled to respect as such.

The Jensen case was followed in *Clyde Steamer Co.* v. *Walker,* 244 U. S. 255, 257, 61 L. ed. 1116, 37 Sup. Ct. 545, which was a case where an employee, who could, under his contract, have been assigned to work upon the pier, was injured while at work upon a boat lying in navigable waters. An award under the Compensation Law of New York had been approved by the court of appeals of that state (215 N. Y. 529, 109 N. E. 604, Ann. Cas. 1916B, 87). The judgment was reversed on the authority of the Jensen case.  ·

The Jensen case was approved in *Chelentis · v. Luckenbach Steamship Co.,* 247 U. S. 372, 62 L. ed. 1171, 38 Sup. Ct. 501, and it was therein held that no state could abolish the maritime measure of recovery by a seaman for personal injuries received in the performance of his duties at sea through the negligence of a superior officer, and substitute therefor the rule of the common law.

The Jensen case was followed in *Peters* v. *Veasey,* 251 U. S. 121, 64 L. ed. 180, 40 Sup. Ct. 65, where a longshoreman fell through a hatchway while at work on board a vessel lying in navigable waters and was injured. In proceedings under the Workmen's Compensation Law of Louisiana, an award had been made which was affirmed by the Supreme Court of that state (142 La. 1012, 77 So. 948). That judgment was reversed. Mr. Justice Brandeis and Mr. Justice Clarke dissented.

The doctrine of the Jensen case was reaffirmed in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 64 L. ed. 834, 40 Sup. Ct. 438, 11 A. L. R. 1145, in which case the court went so far as to hold that Congress could not make a valid law providing that these state compensation statutes should apply to maritime cases, and declared unconstitutional an act passed by Congress on October 6, 1917, 40 Stat. 395, less than five months after the announcement of the Jensen decision and obviously passed to correct the situation disclosed by that case, which attempted to make state laws applicable to maritime cases, by adding to the saving clause in the federal statute, Judicial Code, sec. 24, subd. 3 (28 U. S. C. A. § 41, subd. (3) note) and sec. 256, the words "and to claimants the rights and remedies under the workmen's compensation law of any state."

The Jensen case was endorsed in *Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479, 67 L. ed. 756, 543 Sup.

Ct. 418, wherein it was held that one who lost his life while at work repairing a vessel moored in navigable waters, was entitled to recover in the federal court since the work and the rights and liabilities of the parties had a direct relation to navigation and commerce.

We pause here to consider the claim that the Jensen case was modified by *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, 66 L. ed. 321, 42 Sup. Ct. 157, 158, 25 A. L. R. 1008, and other cases to be referred to. In the Rohde case, a carpenter employed by a ship building company was injured while at work on a ship in process of construction lying in a navigable river at Portland, Ore. At the time of the accident, the ship was nearly completed, but was not ready for delivery. The questions certified up were: (1) Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters? (2) Is libellant entitled, because of his injury, to proceed in admiralty against respondent for damages? The court did not limit its discussion to the literal terms of the questions, but gave its views of their real intendment. It was held that the contract for the construction of the boat was non-maritime, and although the incompleted structure upon which the accident happened was lying in navigable waters, neither Rohde's general employment nor his activities at the time, had any direct relation to navigation or commerce, that the case was not within the admiralty and maritime jurisdiction, and that the Oregon Compensation Law applied.

The case is clearly distinguishable from the case in hand and is no departure from the Jensen case. The Court expressly says that "this conclusion accords with *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 61 L. ed. 1086" and other cases cited. The case we are handling is that of a workman engaged in the repair of a completed vessel and such work has a direct relation to navigation, as shown by the Kierejewski case.

In *State Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263, 66 L. ed. 933, 42 Sup. Ct. 473, 474, 25 A. L. R. 1013, it was held that a state compensation act could be applied to the case of accidental injury of a longshoreman while at work upon the dock unloading a vessel lying in navigable waters. The court points out the distinction between accidents that occur on the water and those that occur on a wharf, and says that to the

last-named cases, "the local law has always been applied." The Jensen case and others that follow it were approved.

*Western Fuel Co.* v. *Garcia, Admr.*, 257 U. S. 233, 66 L. ed. 210, 42 Sup. Ct. 89, was a case wherein the intestate, Sousa, was instantly killed while at work as a stevedore on a boat lying in navigable waters. Application was first made for an award under the Workmen's Compensation Act of California, which was granted. But the Supreme Court of that state annulled it on August 17, 1917, a year and a day subsequent to Sousa's death. Thereupon, the widow and children of Sousa began an admiralty suit *in personam* against the fuel company praying for damages for negligence. Later, Garcia, having been appointed administrator, filed an amended libel on which the case was tried. Damages were awarded in the court below, and under the direction of the Supreme Court the whole case was sent up for review. It was held on the authority of *American S. B. Co.* v. *Chase*, 16 Wall. 522, 531, 21 L. ed. 369, 371, and *Sherlock* v. *Alling*, 93 U. S. 99, 23 L. ed. 819, that when a death results from a maritime tort committed on navigable waters within a state whose statutes give a right of action on account of death by wrongful act, the admiralty will entertain a libel *in personam* for the damages sustained by those to whom such right is given; and that the subject is maritime and local in character, and the specified modification of or supplement to the rule applied in maritime courts when following the common law will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations.

Whatever else might be said of this case, it is enough for present purposes to call attention to the fact that it involved a tort action and not one based upon contract, and that it was not intended to modify the Jensen case in any particular as applied to cases like the one in hand. This appears from the citations therein to the Jensen case.

It may not be amiss to suggest, in passing, that Sousa was killed on August 5, 1916, since which time, Congress passed the Merchant Marine Act, 41 Stat. 988, providing jurisdiction in admiralty of suits for damages from certain deaths caused by wrongful act and occuring on navigable waters, which super-

sedes the application of the death statutes of the several states. *Lindgren* v. *United States,* 281 U. S. 38, 74 L. ed. 686, 50 Sup. Ct. 207.

The Jensen case stands unaffected by these cases. *Washington* v. *W. C. Dawson & Co.,* 264 U. S. 219, 68 L. ed. 646, 44 Sup. Ct. 302, 305, is full authority for this statement. The immediate question in that case was whether one engaged in the business of stevedoring, whose employees work only on board ships in the navigable waters of Puget Sound, can be compelled to contribute to the accident fund provided by the Workmen's Compensation Act of the State of Washington. With this case is considered *Industrial Accident Commission of California* v. *James Rolph Company,* which came up from a judgment of the Supreme Court of California, holding that the industrial accident commission of that state had no jurisdiction to award compensation for the death of a workman killed while engaged at maritime work, under a maritime contract, upon a vessel moored at her dock in San Francisco Bay, discharging her cargo.

Both cases involved the constitutionality of the act of Congress of June 10, 1922 (28 U. S. C. A. §§ 41 (3), 371). The Supreme Court held that the act was unconstitutional. There, as here, it was claimed that the Jensen case and the other cases following it had been modified by subsequent decisions of that court—especially *Western Fuel Co.* v. *Garcia, supra; Grant Smith-Porter Ship Co.* v. *Rohde, supra,* and *State Industrial Commission* v. *Nordenholt, supra.*

The court proceeded to analyze the previous cases including the three just referrred to and asserted: "None of the later causes depart from the doctrine of *Southern P. Co.* v. *Jensen,* and *Knickerbocker Ice Co.* v. *Stewart * * *.*"

This case was decided February 25, 1924.

In *Robins Dry Dock & Repair Co.* v. *Dahl,* 266 U. S. 449, 69 L. ed. 372, 45 Sup. Ct. 157, a workman was injured through the insufficiency of a scaffold on a steamboat lying in navigable waters. He sued in the state court (208 App. Div. 711, 743, 302 N. Y. S. 922). A judgment in his favor was reversed, not because he was in the wrong court, but because the court below instructed the jury that a state law regarding scaffolds could be considered, not as a basis of recovery, but on the question of negligence. For this misdirection, the judgment was re-

versed. It is to be noted that Dahl was repairing a completed vessel, which as the court points out, was not a matter of mere local concern, and distinguished it from the Rohde case already referred to. The Court also held that Dahl's work had a direct relation to navigation and commerce. The authorities cited were nearly all cases relying more or less upon the Jensen case.

In *Miller's Indemnity Underwriters* v. *Braud,* 270 U. S. 59, 70 L. ed. 470, 46 Sup. Ct. 194, a diver while at work removing the timbers of an abandoned set of ways in navigable waters lost his life through a failure of his air supply. The employer carried insurance under a Texas Law. The employees did not contribute anything to the plan provided by the law, but they were presumed to accept its provisions and to waive all right to recover damages for injuries at common law or under any statute unless they gave definite written notice to the contrary. No such notice was given by the deceased. The Court, following *Grant Smith-Porter Ship Co.* v. *Rohde, supra,* held that the state statute applied. It is to be noted that the diver's work had no relation to navigation except as it pertained to the removal of an obstruction to it, and that the Court in speaking of Braud's work, said in *Baizley's Iron Works* v. *Span,* 281 U. S. 222, 74 L. ed. 819, 50 Sup. Ct. 306, elsewhere cited herein, that it had only remote relation to navigation or commerce.

*Messel* v. *Foundation Co.,* 274 U. S. 427, 71 L. ed. 1135, 47 Sup. Ct. 695, 697, was a case wherein the plaintiff was injured (but not fatally) while engaged in the repair of a steamship afloat on navigable waters. He sued his employer who had the contract for the repairs, claiming to recover under an article of the Revised Code of Louisiana, which, it is held, is the equivalent of the common law. He also made an alternative claim under the state Workmen's Act. The state court held that Messel was injured while aboard ship under a maritime contract, and that the state court had no jurisdiction. The Supreme Court, however, reversed the judgment, not on the ground that the Workmen's Act applied (it said, in effect that it did not), but on the ground that the saving clause contained in the federal law, "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it," enabled the plaintiff to sue in the state court for a maritime tort, but that his recovery, if any, must be under the maritime law.

*Alaska Packers Asso.* v. *Industrial Accident Commission of California,* 276 U. S. 467, 72 L. ed. 656, 48 Sup. Ct. 346, was the review of a judgment affirming a judgment of the Industrial Accident Commission awarding compensation for injuries caused to an employee while attempting to float a stranded boat. At the time in question, the employee was standing on the land pushing on a twenty-six-foot fishing boat in an effort to push it into navigable water. His duties were partly on land and partly on water. It was held that when he was injured he was not engaged in work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law, and that the work was local in character. The Rohde case and Braud case were followed and the judgment affirmed.

In *Sultan Ry. & Timber Co.* v. *Department of Labor & Industries of the State of Washington (Eclipse Mill Co.* v. *Department of Labor & Industries),* 277 U. S. 135, 72 L. ed. 820, 48 Sup. Ct. 505, it was held that a state may bring within the operation of its workmen's compensation laws men employed in booming logs to be conducted to saw mills, before transportation has been begun and after it is ended. The decision is predicated on the Rohde case, the Braud case, and the Alaska Packers Asso. case, above referred to.

*Northern Coal & Dock Co.* v. *Strand,* 278 U. S. 142, 73 L. ed. 232, 49 Sup. Ct. 88, 89, referred to above on another point, reaffirms the doctrine of the Jensen case. Strand, whose employment contemplated that he should work both on land and water, was killed while he was at work as a stevedore on a vessel lying in navigable waters. "His employment," says the Court, "so far as it pertained to such work, was maritime; the tort was maritime; and the rights of the parties must be ascertained upon a consideration of the maritime law." It was also held that the Merchant Marine Act of June 5, 1920, 41 Stat. 988, covered the case, because Strand was a "seaman" within the meaning of the term in that act.

*London Guaranty & Accident Co.* v. *Industrial Accident Commission of the State of California,* 279 U. S. 109, 73 L. ed. 632, 49 Sup. Ct. 296, approves the Jensen case. It reviews many previous cases and decides that a sailor employed to assist

in handling a boat used on navigable waters to take out fishing parties for hire, is not within the operation of a state workmen's compensation act and that no allowance can be made thereunder for his death while attempting to rescue a vessel that has broken from its moorings. An attempt to apply the doctrine of the Rohde case, on the ground that these state laws apply unless their application would interfere with the uniformity of the general maritime law in interstate or foreign commerce was not sustained. It was made plain that to allow the state law to apply would be prejudicial to the characteristic features of the maritime law—which could not be tolerated. Mr. Justice Brandeis alone dissented.

In *Employers' Liability Assur. Corp.* v. *Cook*, 281 U. S. 233, 74 L. ed. 823, 50 Sup. Ct. 308, 309, an employee of an automobile manufacturing company was injured while assisting in unloading a steamboat lying in navigable waters. The company carried a policy of insurance protecting it from loss on account of injuries to its employees. Cook was fatally injured while on board a boat afloat on navigable waters assisting in unloading it. The industrial accident board denied an application for an award under the state Workmen's Compensation Act. Suit was thereupon brought in the state court, which suit was removed to the district court. A verdict and judgment for the respondent resulted. The Circuit Court of Appeals (31 F. (2d) 497, 498) affirmed this judgment, saying: "We think it fairly can be said that the matter of unloading these two ships of the Ford Motor Company at rare intervals was 'of mere local concern, and its regulation by the state will work no material prejudice to any * * * feature of the general maritime law.'" This proposition was repudiated by the Supreme Court, and the judgment was reversed, though the state law was elective in form. The court said that "the employer did not surrender rights guaranteed him by the federal law merely by electing to accept one of two kinds of liability in respect of matters within the state's control, either of which she had power to impose upon him." The court also said that it was unimportant whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do.

In *Baizley Iron Works* v. *Span*, 281 U. S. 222, 74 L. ed. 819, 50 Sup. Ct. 306, an employee of the iron works was engaged in making repairs on a completed vessel lying in navigable waters, his immediate task being the painting of the engine room and repairing its floor. An award under a state compensation law had been sustained by the highest court of the state (295 Pa. 18, 144 Atl. 753.) That law provided that it should be conclusively presumed that both employer and employee have accepted its provisions unless one of them makes written statement to the contrary. It does not appear that either of them had done this.

It was claimed in the Supreme Court as it is claimed here, that the matter involved was of a local nature without direct relation to navigation or commerce, and that an application of the state law would not prejudice the characteristic features of the maritime law. The Court held otherwise, saying: "But so to hold would conflict with principles which we have often announced. * * * Repairing a completed ship lying in navigable waters has direct and intimate connection with navigation and commerce as has been often pointed out by this Court."

The Jensen case was again approved in *Kellogg & Sons* v. *Hicks*, 285 U. S. 502, 76 L. ed. 903, 52 Sup. Ct. 450, wherein it was held that a state workmen's compensation act is inapplicable to injuries sustained on navigable waters in consequence of a maritime tort.

And finally in *Minnie* v. *Port Huron Terminal Co.*, 295 U. S. 647, 79 L. ed. 1631, 55 Sup. Ct. 884, in an unanimous opinion of the court written by Chief Justice Hughes, the Jensen case is approved and its doctrines seem to be fully and finally established. That was a case wherein a longshoreman was injured while at work on a vessel lying in navigable waters, by being hit by a swinging hoist and being thereby precipitated upon the wharf. He sought compensation from his employer under the Compensation Act of the State of Michigan. An award was made but it was vacated by the Supreme Court of the state (269 Mich. 295, 257 N. W. 831) on the ground that the federal law controlled. This judgment was affirmed on the authority of the Jensen and other cases.

█ A careful consideration of the foregoing cases, decided by the court in which is vested the authority of speaking the

last word in cases like the one before us, convinces us that the Jensen case and those following it govern the case in hand, and constrains us to hold that the commissioner of industries had no jurisdiction to make an award under the Workmen's Compensation Act.

We find no occasion for discussing the other questions debated in the briefs.

*Judgment that the order of the commissioner of industries awarding compensation to the claimant, Bertha St. John, for and on account of the accidental death of her husband, Leon St. John, should be, and the same hereby is, annulled, set aside, and held for naught. Let the result be certified to the commissioner of industries.*