## BROWN v. ÆTNA CASUALTY & SURETY CO. et al.

### No. 10786.

Court of Civil Appeals of Texas. Galveston.

Nov. 17, 1938.

Rehearing Denied Dec. 15, 1938.

---

[1] Not released by court at date of publication.

262

Morris Pepper and J. A. Collier, both of Houston (James A. Copeland, of Houston, of counsel), for plaintiff in error.

Fulbright, Crooker & Freeman, of Houston (Paul Strong, of Houston, of counsel), for defendant in error Aetna Casualty & Surety Co.

Bracewell & Spiner, of Houston, for intervener Sylvia Robinson.

GRAVES, Justice.

This appeal is from a judgment of the 113th District Court of Harris County dismissing for want of jurisdiction the suit of plaintiffs in error, Pearl Brown, Crawford Brown, Mary Jones, and Sylvia Robinson, for compensation, under the Texas Employers' Liability Act, Vernon's Ann.Civ.St. art. 8306 et seq., for the accidental death of Adolphus Brown, against the defendant in error Casualty Company, his employer's insurance-carrier, upon this stated finding of fact: "The evidence conclusively shows that Adolphus Brown came to his death while performing maritime service to the completed vessel, 'Sarnette', which was capable of self-propulsion, and was afloat in navigable waters of the United States".

This holding was made after a verdict favorable to the plaintiff in error upon special issues had been returned by a jury in response to evidence from all parties, on the Casualty Company's motion, then presented, asserting that such facts brought the declared-upon claims under the exclusive jurisdiction of the United States courts in Admiralty, to the exclusion of the Texas compensation statute, so invoked.

Wherefore, the main if not the sole question presented here is whether or not the trial court erred in so determining the cause to be cognizable, if at all, by the United States courts of Admiralty only. After having had the benefit of able briefs and arguments from both sides, it is determined that the court below was correct, and that under the conclusive if not undisputed state of the evidence, the Admiralty jurisdiction

of the Federal courts was shown to apply to the situation presented, rather than that of the State courts in administering its policy of compensation-insurance for industrial accidents, the material facts in substance being these:

"The boat was the yacht 'Sarnette', which was of 16 tons gross, eleven tons net, licensed by the United States Government, to proceed from port to port of the United States; this yacht was 46 feet long, 12 feet wide, and drew 4 feet and 5 inches of water; the yacht was a seagoing boat, which was actually used to go out in the Gulf in the summer, and which had come up Buffalo Bayou to the Shippers Compress Company.

"Charlie Chandler worked at the Shippers Compress, along with Adolphus Brown, the deceased. Both were working at the compress on December 10, 1935, under the boss, Mr. Armstrong, who gave the orders. The Shippers Compress was on the north side of Buffalo Bayou just east of Hill Street and adjoining the bayou at the Hill Street bridge. This boat had been brought up the bayou in September, and tied up at the Shippers Compress docks on the bayou. They had the biggest flood in the history of Houston in December, 1935. The swift water caused the boat's lines to chafe and cut in two, and the boat broke loose on Sunday morning (December 8, 1935). It started down the bayou, but men from the compress jumped in their cars and went down to the 'Saap' bridge and caught the boat as it came under the bridge, which was about one-fourth of a mile from the Shippers Compress. The boat was tied downstream from the bridge by two lines on shore to telephone posts, one line to a tree and one line to the bridge, all of which were fixed to the bow of the boat. The lines were so attached and arranged as to permit the boat to be moved and its position maintained in the middle of the bayou. There was a small line on the boat that could be tightened to pull it away from the bank. They intended to leave the boat tied to the bridge until the water went down, when it was to be brought back to the docks. On Monday, December, 9, 1935, at about 5:00 or 5:30 o'clock P. M., Thomas Stewart took Charlie Chandler and Adolphus Brown, the deceased, down to where the boat was tied at the 'Saap' bridge. Mr. Armstrong, the boss, had given Charlie and Adolphus orders to go down and watch the boat. According to Stewart, the deceased had been a utility man at the compress, and apparently had not worked on this boat before. He principally loaded cotton on drays. Adolphus Brown, the deceased, was to stay on the boat and Charlie on the land, and they were to manipulate the lines to keep the boat out in the middle, or channel, so that it would not ground when the tide went out or the water went down. When they went there at 5:00 o'clock, Adolphus, as was his duty, got on the boat and Charlie stayed on shore. One of them had to be on shore, and the other had to be on the boat. About 1:00 o'clock that night the accident happened. The tide went out and the boat grounded. Adolphus was on the boat. He said 'We have got to let slack on the rope to get it off the land'. Charlie loosened the lines. Adolphus was to hold the boat by a rope and keep it from going too far in the channel. He was to manipulate the lines from the boat. The boat straightened out in the channel and that was the last that Charlie saw of Adolphus. They searched for him. His body was found in May, 1936."

"Appellant's witness, Thomas Stewart, admitted that Buffalo Bayou was navigable for this type of boat at the Shippers Compress, and that barges came up there. This admission is corroborated by the testimony of Raymond Reeves, captain of the 'Sarnette', to the effect that it and vessels of like tonnage could navigate Buffalo Bayou. He also stated that a boat leaving Main Street in Houston, would go down Buffalo Bayou to get to Galveston, and in so doing would pass the Shippers Compress. Captain Crotty, the Assistant Port Director at Houston, testified without contradiction that Buffalo Bayou was of sufficient depth in December, 1935, to be navigated by barges to the M. & M. Building landing, which barges could go up full at high tide, or loaded to 6½ feet at low tide. He also testified that a boat could go down Buffalo Bayou to the Turning Basin through the main Ship Channel to Morgan's Point, across Galveston Bay to Bolivar Roads, and through the jetties to the Gulf. And further that the intracoastal canal was opened in 1934, running from the Mississippi at New Orleans to Galveston, through which cargo-ships and barges had come from the Mississippi into the Houston Ship Channel, and discharged both above and below the Turning Basin."

■ The plaintiff in error, as well as the intervenor in the trial court who makes common cause with her here, in inveighing

against the adverse judgment, relies chiefly upon the former holding of this court in Southern Surety Co. v. Crawford, 274 S.W. 280, and Southern Surety Co. v. Stubbs, 199 S.W. 343, 346, certiorari in the former having been denied by the United States Supreme Court, as shown in 270 U.S. 655, 46 S.Ct. 353, 70 L.Ed. 783; but it seems apparent, when the facts controlling those two causes are compared with the stated ones here, that they are distinguishable from this, in that both of those causes grew out of the death of two deck-hands on the same nonself-propelling dredge, which was engaged in the improvement of a Texas inland harbor-channel; this court held that service to have been of such a local nature as not to affect the rules of the sea, and therefore not to have been exclusively within the Admiralty jurisdiction of the Federal Courts; plainly, however, that situation appears to have been a far cry from the one here reflected, considering the facts recited supra. Under them, that Buffalo Bayou at the place of the accident was a navigable water of the United States, and that the service in which Adolphus Brown lost his life was a maritime one, hence that the State Compensation Act did not apply, seems clear from these authorities: 1 Amer.Jur. 575; Perkins v. United States Fidelity & Guaranty Co., Tex.Com.App., 299 S.W. 213; Wishart v. The Jos. Nixon, D.C., 43 F. 926; The Herdis, D.C., 22 F.2d 304; London Guarantee & Accident Co. v. Industrial Accident Commission, 279 U.S. 109, 49 S.Ct. 296, 73 L.Ed. 632; Union Oil Co. v. Pillsbury, 9 Cir., 63 F.2d 925; McKinnon v. Kinsman Transit Co., 240 App.Div. 359, 270 N.Y.S. 583, affirmed 265 N.Y. 560, 193 N.E. 320; Mangieri v. Stephens, Inc., 232 N.Y. 596, 134 N.E. 586; Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232; Employers' Liability Assur. Corp. v. Cook, 281 U.S. 233, 50 S.Ct. 308, 74 L.Ed. 823; Independence Ind. Co. v. Mansfield, Tex.Civ.App., 2 S.W.2d 547, writ of error refused; 1 Corpus Juris, 1262; The Canton, 5 Fed.Cas. p. 29, No. 2388; 2 Corpus Juris Secundum, Admiralty, pp. 65, 66, § 5; The City of Pittsburgh, D.C., 45 F. 699; St. John v. Thomson, 108 Vt. 66, 182 A. 196; Bell v. Southern Casualty Co., Tex. Civ.App., 267 S.W. 531, writ of error refused; Perry v. Haines, 191 U.S. 17, 24 S. Ct. 8, 48 L.Ed. 73; Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S. Ct. 409, 65 L.Ed. 847; United States v. Holt State Bank, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465; 27 R.C.L. 1313; Welder v. State, Tex.Civ.App., 196 S.W. 868, writ of error refused; Simmons v. The S. S. Jefferson, 215 U.S. 130, 30 S.Ct. 54, 54 L.Ed. 125, 17 Ann.Cas. 907.

■ Indeed, on well-settled authority, this court may take judicial notice of the fact that the Bayou was then and there navigable, at least for boats of the size and draft of this one. Brownsville & Matamoros Municipal Bridge Co. v. Gateway Bridge Co., Tex.Civ.App., 2 S.W.2d 1012; Ex parte Boyer, 109 U.S. 629, 3 S.Ct. 434, 27 L.Ed. 1056; Arizona v. California, 283 U. S. 423, 51 S.Ct. 522, 75 L.Ed. 1154; 23 Corpus Juris, 1969; Boone v. Kingsbury, 206 Cal. 148, 273 P. 797.

■ It is deemed unnecessary to catalogue, or even to undertake a resume of, the sources from which such judicial knowledge may be acquired—such as the history of the stream's development and utilization, the geography of it, the Reports to Congress affecting it for the time here involved by the Chief Engineers of the United States Army, etc.—for in this instance their name is legion.

■ That Adolphus' services aboard the "Sarnette" were maritime in character, since he went there for the purpose of and with instructions to keep her in the middle of the channel, to preserve and save her from stranding and possible loss, also appears because they were in the nature of a salvage. The rule upon that feature was thus declared in Simmons v. S. S. Jefferson, 215 U.S. 130, 30 S.Ct. 54, 56, 54 L.Ed. 125, 17 Ann.Cas. 907:

"The claim which the libel asserted was for salvage compensation, and it therefore presented a character of action cognizable exclusively by a court of admiralty of the United States. Houseman v. The North Carolina, 15 Pet. 40, 48, 10 L.Ed. 653, 656."

■ If, however, the holding that the Admiralty law applied to the exclusion of the Compensation Act be erroneous, for another reason it is thought a judgment against the claimants was the only proper one that could have been rendered in the undisputedly developed facts, and that is this: Adolphus Brown was conclusively shown not to have been an employee within the meaning of the Texas Workmen's Compensation Act, as it existed at the time of his death on December 10 of 1935, in that he was not then engaged in the "usual"

course of business of his employer; the facts upon this feature, without dispute, are these:

"Appellant's witness, Thomas Stewart testified:

"Q. The Shippers Compress Company is in what business? A. Compressing cotton for export.

"Q. And storing cotton down there in its warehouse? A. That is right.

"Q. And was at the time of this flood? A. That is right."

Likewise, appellant's witness, Abbott Armstrong, manager of the Shippers Compress Company, testified:

"Q. What kind of work is the Shippers Compress Company engaged in? A. Handling of cotton, segregating, sampling, compressing, getting it ready for shipside and the delivery of it to the trucks."

Mr. Armstrong also stated that the boat belonged to Mr. Womack, the President of the Shippers Compress Company, but that if the Company wanted to use the boat, it did so by making arrangements with Mr. Womack, and that the boat had not been used since September 1, 1935. As appears above, about 1 o'clock A. M., December 10, 1935, the deceased, Adolphus Brown, was on the boat to hold it by a rope and keep it from going too far in the channel; the boat straightened out in the channel, and that was the last seen of Adolphus Brown. This is the injury and incident for which plaintiff in error seeks recovery.

■ R.S. Art. 8309, § 1, as in force at that date, that is, December 10 of 1935, in its definition of an "Employee" contained this express exception: "and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer."

Our Supreme Court in construing that statute in its then condition, in Texas Employers' Insurance Association v. Wright, 128 Tex. 242, 97 S.W.2d 171, thus restricted the meaning of that provision [page 172]: "It is the character of the work being done at the time of the injury and not the contract of employment that determines whether the employee is engaged in the usual course of the business. Wells v. Lumbermen's Reciprocal Association (Tex. Com.App.) 6 S.W.2d 346; Fidelity Union Casualty Co. v. Carey (Tex.Com.App.) 55 S.W.2d 795. Defendant in error at the time of his injury was working for the mill and elevator company in accordance with its direction, but he was not engaged in the performance of work in the usual course of the trade or business of the company. He therefore was not an employee within the statutory definition and is not entitled to compensation under the statute. To hold otherwise would be to ignore and give no effect to the word 'usual' contained in the definition."

■ It is true the statute was liberalized by an amendment that became effective on May 5 of 1937, slightly two years after Adolphus' death, but obviously the law existing at the time of his death ruled this cause in that respect.

So here, at the time of his death, Adolphus Brown was not engaged in the handling of cotton, segregating, sampling, compressing, getting it ready for shipment, or the delivery of it to trucks, which, as shown above, was the "usual" business of Shippers Compress Company. On the contrary, he was riding a flood on the deck of a boat in Buffalo Bayou belonging to Mr. Womack, and handling and trying to preserve the boat. It seems clear, therefore, that he was not engaged in the "usual" course of the business of the Shippers Compress while he was attempting to preserve Mr. Womack's property, so was not an "employee" within the meaning of the Texas Workmen's Compensation Act; wherefore, these facts having come out in the evidence, and the Casualty Company having moved for judgment non obstante veredicto, after having duly raised this same objection during the progress of the trial, if the court had jurisdiction to try the controversy out, that motion should have been granted anyway.

Without further discussion, the judgment will be affirmed.

Affirmed.

Judge MONTEITH participating as Special Commissioner.