## LONDON GUARANTEE & ACCIDENT COMPANY, LTD., *v.* INDUSTRIAL ACCIDENT COMMISSION OF CALIFORNIA ET AL.

No. 491. Argued March 7, 1929.—Decided April 8, 1929.

Mr. *Leo C. Weiler,* with whom *Messrs. Wm. E. Lowther* and *Max Ash* were on the brief, for appellant.

*Mr. George C. Faulkner, Jr.,* for appellees.

114

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This proceeding was begun by a petition to the Industrial Accident Commission of California to obtain an award for the death of John James Uttley Brooke, an unmarried minor nineteen years of age, who was drowned in Santa Monica Bay on April 8, 1926, while in the service of the Morris Pleasure Fishing, Inc. The appellant was the insurance carrier of the employer, and the question presented in this appeal is whether the case was for the exclusive cognizance of a court of admiralty under § 256 of the Judicial Code, or might be brought within the purview of the Workmen's Compensation Act of California.

The petition was filed by the mother and the stepfather of the deceased before the Commission, which on October 6th, 1926, made its findings and held that he was not at the time of his death engaged in maritime employment, and that both he and his employer were subject to the provisions of the Compensation Act. The Commission found that neither the mother nor the stepfather was dependent on him, and, accordingly, that the award should be limited to the reasonable expenses of burial, fixed at $150.

There was a proceeding in certiorari in the District Court of Appeal, Second Appellate District, Division Two, to review the award of the Commission. The District Court of Appeal found that the Workmen's Compensation Act of California did not give jurisdiction of this cause

and annulled the award.  256 Pac. 857.  The Supreme Court of the State reversed the District Court of Appeal and affirmed the award of the Industrial Accident Commission.  265 Pac. 825.  An appeal to this Court was then allowed.

The facts as shown before the Commission and as stated by the District Court of Appeal were as follows:

" The Morris Pleasure Fishing, Inc., is a corporation which carries on the business of maintaining and operating from Santa Monica Bay a small fleet of fishing vessels for the accommodation of the public seeking recreation in deep-sea fishing.  In the fishing seasons its practice has been to have excursions daily from, Santa Monica Bay to the ocean fishing grounds, a distance of three to five miles, with fixed charges both for half-day and full-day trips.  For use in this business the company has several vessels, ranging from four to fourteen tons registry, equipped with gas engines and capable of cruising a distance of 500 miles.  The business has been confined entirely to the maintenance of these pleasure-fishing vessels and the transportation of patrons to and fro by water, except that excursionists have also been supplied with bait.  As one of the necessary incidents of its business the company employs seamen to navigate its vessels; and before and at the time of the accident which occasioned Brooke's death, he was in the company's employ as an apprentice navigator and seaman.  In that capacity he made daily trips as required with the company's vessels, and at times was substituted as ' spare skipper ' for one of the regular skippers.  On April 8, 1926, one of the company's fishing vessels called ' W. K.,' of about seven tons registry, was moored, with no one aboard, in Santa Monica Bay about three-quarters of a mile to a mile from the pier.  A storm having arisen, the vessel broke from her moorings early in, the afternoon and began to drift toward the shore.  In an effort to save the vessel from

destruction, Captain Morris, as Brooke's superior officer, had Brooke and another employe, named Gregory, put off from the pier with the captain himself, in a boat about eighteen feet long, with the purpose in mind of boarding the ' W. K.' and returning her to her anchorage. But as they neared the drifting vessel, their boat was capsized by a heavy wave and all three were drowned."

The appellant contends that, under § 256 of the Judicial Code, this is a cause of action in admiralty, enforceable in a court of admiralty, or at common law if the latter affords a remedy, and is not a matter of which cognizance may be had under a state workmen's compensation act.

The Commission contends that the matter is one of local concern which does not affect commerce or navigation and of which the Commission is not deprived of jurisdiction.

Section 256 of the Judicial Code provides that jurisdiction vested in the courts of the United States in all civil causes of admiralty and maritime jurisdiction shall be exclusive of the courts of the several States, saving, however, to suitors in all cases the right of a common law remedy where the common law is competent to give it.

In *Southern Pacific Company* v. *Jensen,* 244 U.S. 205, where a stevedore, engaged in unloading a ship in navigable waters in New York, was killed, and an award of compensation was made against the ship-owner under the state workmen's compensation act, it was held that that remedy, providing for compensation under a prescribed scale for injuries and deaths of employees without regard to fault, and being administered through a state administrative commission, was a remedy unknown to the common law and incapable of enforcement by the ordinary processes of any court, and hence was not among the common law remedies saved to suitors under § 256, and therefore such a remedy was contrary to the Constitution and laws of the United States. The same principle was

followed in *Clyde Steamship Company* v. *Walker,* 244 U. S. 255.

In *Knickerbocker Ice Company* v. *Stewart,* 253 U. S. 149, it was held that an addition to the saving clause of § 256, by which rights and remedies under the workmen's compensation law of any State were given to claimants thereunder, was unconstitutional as being a delegation of legislative power to States and a defeat of the purpose of the Constitution in preserving the harmony and uniformity of maritime law.

In *Union Fish Company* v. *Erickson,* 248 U. S. 308, it was held that a maritime contract of employment was not affected by the California statute of frauds requiring such an agreement, where not to be performed within a year, to be in writing, and that such a contract was not subject to state limitation, because such limitation would materially prejudice the characteristically uniform features of the general maritime law.

The same principle was applied in *State of Washington* v. *W. C. Dawson & Company,* 264 U. S. 219, where it was sought to compel an employer of stevedores to contribute to an accident fund created by the workmen's compensation act of the State. Under the same title, it was held on the same principle that workmen's compensation under a state statute could not be awarded for the death of a workman killed while engaged at maritime work, under a maritime contract, upon a vessel moored on navigable waters and discharging her cargo.

In *Robins Dry Dock Co.* v. *Dahl,* 266 U. S. 449, the same principle was recognized and enforced in a case of maritime tort suffered by one doing repair work on board a completed vessel. The case was reversed, on the ground that the liability of the employer in such a suit could not be affected by the provision of a state law regulating the duties of employers generally to furnish safe scaffolds.

Another class of cases is illustrated by *Western Fuel Co.* v. *Garcia,* 257 U. S. 233. There a stevedore was killed while at work in the hold of a vessel under charter to the Fuel Company. The Workmen's Compensation Commission granted an award to the widow and children. This was annulled by the state court, and then the widow and children brought a suit in admiralty against the Fuel Company in the District Court of the United States, alleging death by negligence, and prayed for damages. The District Court was held to have jurisdiction in admiralty under *La Bourgogne,* 210 U. S. 95; *American Steamboat Co.* v. *Chase,* 16 Wall. 531; *The Hamilton,* 207 U. S. 398. The plaintiff was defeated in the admiralty suit by application of the state statute of limitations. This Court thus recognized a well established exception to the nonapplication of state statutes to admiralty jurisdiction, which is when they give a common law remedy for death by wrongful act. But this Court, in the *Knickerbocker Ice Co.* case, decided that it could not extend the saving clause of § 256 to include an award under a state workmen's compensation act. Such cases as the *Garcia* case, *supra, Northern Coal Co.* v. *Strand,* 278 U. S. 142, and *Great Lakes Dock Co.* v. *Kierejewski,* 261 U. S. 479, are therefore hardly to be regarded as real exceptions to the exclusive jurisdiction of admiralty by § 256.

Other cases, however, are cited to sustain the state jurisdiction in this case. The first and chief one is *Grant Smith-Porter Company* v. *Rohde,* 257 U. S. 469. That was a proceeding to recover an award under a workmen's compensation act, from a ship-builder, for injuries which a carpenter received while he was working on an unfinished vessel moored in the Willamette River. The contract for constructing the vessel was non-maritime, and although the uncompleted structure upon which the accident occurred was lying in navigable waters, neither

Rohde's general employment nor his activities at the time had any direct relation to navigation. It was held to be a matter of merely local concern, in view of the fact that reference of the rights and liabilities of the parties, under a contract between them, had been made by their consent to the local statute; that they had not consciously contracted in view of admiralty, and such an exception would not injure any characteristic feature of the general maritime law or the harmony or uniformity of that law in its international and state relations.

In *Miller's Indemnity Underwriters* v. *Braud*, 270 U. S. 59, the plaintiff's intestate was employed as a diver by a ship building company. He submerged himself from a floating barge anchored in a navigable river 35 feet from the bank, in order to saw off some timbers of an abandoned set of ways once used for launching ships which had become an obstruction to navigation. He died from suffocation for lack of air supply during his work. His representative was allowed to recover from the employer's insurer under the Texas Workmen's Compensation Law. The facts disclosed a possible maritime tort to which the general admiralty jurisdiction might extend, except that the state compensation law prescribed an exclusive remedy. The state statute was allowed to have effect. It was thought that enforcing such a state statute would not tend to destroy the characteristic features of maritime law.

In *Alaska Packers' Association* v. *Industrial Accident Commission*, 276 U. S. 467, a person engaged by a fishing and canning company as a seaman, also as a fisherman, and then for general work in and about a cannery, was injured after the fishing season was over while standing upon the shore and endeavoring to push a stranded fishing boat into navigable waters for the purpose of floating it to a nearby dock, where it was to be lifted out and stored for the winter. It was held that the injury, even if within

admiralty jurisdiction, was of such a local character as to be cognizable under a state compensation law,—a ruling which would not injure the characteristic features or uniformity of the admiralty law.

In *Sultan Railway Co. v. Department of Labor and Industries of the State of Washington*, 277 U. S. 135, an award for injuries under the Workmen's Compensation Law of Washington was sustained. The plaintiff was engaged in assembling saw logs in booms for towage elsewhere for sale, and the breaking up of the booms, which had been towed on a river to a saw mill, and the guiding of the logs to a conveyor extending into the river, by which they were drawn into the mill for sawing. Clearly, even if this had any admiralty feature, it had only an incidental relation to navigation. The rights and obligations of the employees and their employers could well be regulated by local rules which would not work material prejudice to the characteristic features of the general maritime law.

Nothing in these cases could apply to the case before us. They may be said to be of an amphibious character. They have an admiralty feature about them in the locality where they occurred, although even this is doubtful with respect to the *Alaska* case. But the contract in the *Rohde* case was non-maritime, the ship was incomplete, and being completed under a non-maritime contract; both parties had made a non-maritime contract with reference to their liabilities and not in contemplation of the admiralty law. The *Braud* case was one of a maritime tort. But it had no characteristic feature of the general maritime law except locality, and it was very like, in its relation to the state law, to the *Rohde* case. The employment was not maritime, and the transaction and the circumstances thus seemed to have but one characteristic that was maritime. This was true of the *Sultan Company* case.

Other cases cited, but which seem to have no application here, rest on the undisputed circumstance of locality in fixing or excluding admiralty jurisdiction.

In *State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S. 263, the tort complained of was committed upon a dock which was an extension of the land, and was not within the jurisdiction in admiralty at all.

*Smith & Son* v. *Taylor,* 276 U. S. 179, was a case in which a longshoreman was struck by a sling while working on a stage resting solely upon a wharf and projecting a few feet over the water to or near a vessel. He was knocked into the water, where sometime later he was found dead. It was there held that the right of action was controlled by the state and not by the maritime law, since the blow was received on the wharf, which was to be deemed an extension of the land.

And so in *Gonsalves* v. *Morse Dry Dock & Repair Company,* 256 U. S. 171, where an employee, engaged in the repair of a vessel resting on a dock floating on navigable waters, was allowed to recover for negligence of the vessel-owner in the explosion of a blau torch negligently permitted to be out of repair. It was held that repairs to a vessel while in an ordinary dry dock were not made on land, and that the admiralty jurisdiction in tort matters was settled by the locality.

In *Messel* v. *Foundation Co.,* 274 U. S. 427, it was held that a boiler-maker, employed to lengthen the smokestack on the deck of a vessel lying in navigable waters, and injured by negligence of the owner through the sudden burst of hot steam, was entitled to recovery in admiralty or under the saving clause of § 256, by virtue of the Louisiana Civil Code, Art. 2315, declaring that every act whatever of a man that causes damage to another obliges him by whose fault it happened to repair it. This was held equivalent to the operation of the common law, and so, under the saving clause of § 256, to support a suit for dam-

ages either in admiralty or common law. The Louisiana Workmen's Compensation Act gave him no right of action.

• We have thus examined all the cases in this Court since *Southern Pacific Co.* v. *Jensen,* with respect to the efforts to apply the workmen's compensation acts in admiralty, and we have found nothing in them that would justify an award in the present case.

Here it is without dispute that the deceased was a sailor, that his employment and relation to the owner of the vessel were maritime. It is without dispute that the vessel, in the navigation of which he was employed, was registered as a vessel engaged in the navigable waters of the United States, in the business of transporting people for hire. He was a skipper engaged in assisting the navigation of these registered vessels from their mooring place in Santa Monica Bay to the place where the deep sea fishing was to be carried on, a distance of from three to five miles or more, all in navigable waters. The vessels were capable of navigation for 500 miles. There was no feature of the business and employment that was not purely maritime. To hold that a seaman, engaged and injured in an employment purely of admiralty cognizance, could be required to change the nature or conditions of his recovery under a state compensation law, would certainly be prejudicial to the characteristic features of the general maritime law.

Objection is made that the deceased here lost his life by drowning when he was not on a vessel in the navigation of which he had been employed as a seaman. This is immaterial. He was lost in navigable waters. He was engaged in attempting to moor and to draw into a safe place the vessel with relation to which he was employed. It is clearly established that the jurisdiction of the admiralty over a maritime tort does not depend upon the wrong having been committed on board a vessel, but

rather upon its having been committed upon the high seas or other navigable waters. *The Plymouth*, 3 Wall. 20; *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 59, 60.

Another objection to the admiralty jurisdiction here is that the vessel was not engaged in interstate or foreign commerce. It was employed only to run from shore to Santa Monica Bay, five or ten miles to the deep sea fishing place, and then return, and all within the jurisdiction of California. This argument is a complete misconception of what the admiralty jurisdiction is under the Constitution of the United States. Its jurisdiction is not limited to transportation of goods and passengers from one State to another, or from the United States to a foreign country, but depends upon the jurisdiction conferred in Article 3, Section 2, extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction.

Mr. Justice Clifford, in *The Belfast*, 7 Wall. 624, 640, said:

" Difficulties attend every attempt to define the exact limits of admiralty jurisdiction, but it can not be made to depend upon the power of Congress to regulate commerce, as conferred in the Constitution. They are entirely distinct things, having no necessary connection with one another, and are conferred in the Constitution by separate and distinct grants." Citing *The Genesee Chief*, 12 How. 452. See also *In re Garnett*, 141 U. S. 1, 15; *Ex parte Boyer*, 109 U. S. 629, 632; *The Propeller Commerce*, 1 *Black* 574, 578.

Another objection which is pressed on us is that § 256 of the Judicial Code does not exclude the jurisdiction under the California Compensation Act, because the object of the trips was for pleasure and not for commerce. This is a misconception. Commerce is not prevented because the object of it is to serve the pleasure of passengers. The business was that of earning money by transporting people on the navigable waters of the United States, and, strictly

speaking, it is just as much a part of commerce and of the admiralty jurisdiction as if these vessels were carrying cargoes of merchandise. *Gibbons* v. *Ogden,* 9 Wheat. 1, 215 *et seq.* The conclusion sought to be drawn by counsel for the Commission from the *Rohde* and other cases is that workmen's compensation acts will apply unless their application would interfere with the uniformity of the general maritime law in interstate and foreign commerce, and there is neither here. But this omits one of the grounds for making an exception—that it shall not be prejudicial to the characteristic features of the maritime law. That is just what it would be here, for here we have a transaction on the navigable waters of the United States which in every respect covers all the characteristic features of maritime law and has no other features but those. To apply to such a case a state compensation law would certainly be prejudicial to those features. We must hold, therefore, that it was a violation of the exclusive maritime jurisdiction conferred by the Constitution to apply in this case the California Compensation Act.

The judgment of the Supreme Court of California is

*Reversed.*

MR. JUSTICE BRANDEIS dissents.