## NEW AMSTERDAM CASUALTY CO. et al. v. McMANIGAL, Deputy Com'r.

### No. 176.

Circuit Court of Appeals, Second Circuit.

Jan. 11, 1937.

Ralph L. Emmons, U. S. Atty., of Syracuse, N. Y. (Roger O. Baldwin, Asst. U. S. Atty., of Syracuse, N. Y., of counsel), for appellant.

William Butler, of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the Longshoremen's and Harbor Workers' Compensation Act (33 U.S. C.A. §§ 901–950) covers the case of a

workman who was injured while engaged in the construction of a lighthouse in the waters of Lake Ontario about 12 miles offshore from Cape Vincent, N. Y., but within the territorial boundaries of the state. The District Court held the statute inapplicable.

The injured workman, James P. Maloney, was employed as a carpenter by the L. A. Wells Construction Company, which was constructing a lighthouse for the United States at East Charity Shoals in Lake Ontario. A wooden crib had been sunk to the bottom of the shoal in water 12 or 13 feet deep and wooden forms for the pouring of concrete were being constructed on top of the crib. Maloney was working on a scaffold about 7 feet above the water. To save himself from falling into the lake when he accidentally lost his balance, he grabbed an iron reinforcing rod set in the poured concrete, and thereby injured his left hand. Infection developed, resulting in the amputation of a finger and the partial loss of the use of the hand. For this disability he made claim under the Longshoremen's and Harbor Workers' Compensation Act and was awarded compensation. Thereupon his employer and its insurance carrier instituted the present suit against the deputy commissioner to set aside the award. From a final decree in favor of the plaintiffs, the defendant·has appealed.

Section 3 of the statute (33 U.S.C.A. § 903) is entitled "Coverage" and so far as material reads as follows: "§ 903. *Coverage.* (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

[1] Reference to the definitions contained in section 2 (33 U.S.C.A. § 902) discloses that the term "injury" means accidental injury or death arising out of and in the course of employment [subdivision (2)]; that the term "employer" means "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)" [subdivision (4)]; and that the term "employee" excludes the master and members of the crew of any vessel and certain other persons engaged in maritime employment [subdivision (3)]. From the foregoing it is apparent that to come within the coverage of the statute the injured employee must satisfy three conditions: (1) In the course of his employment he must sustain injury upon the navigable waters of the United States; (2) his employment must be maritime; and (3) his injury must occur under circumstances which preclude state. compensation laws from providing for recovery. Thus it was stated in Nogueira v. New York, N. H. & H. R. R. Co., 281 U.S. 128, 131, 50 S.Ct. 303, 74 L.Ed. 754: "The general scheme of the Longshoremen's and Harbor Workers' Compensation Act was to provide compensation to employees engaged in maritime employment, except as stated, for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law." See, also, Crowell v. Benson, 285 U.S. 22, 37, 52 S.Ct. 285, 287, 76 L.Ed. 598.

It has been authoritatively established that aids to navigation such as beacons (whether completed or in process of construction) or mooring posts, though permanently attached to the bottom of the sea, are within the admiralty jurisdiction. The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L.Ed. 236; Latta & Terry Const. Co. v. British Steamship Raithmoor, 241 U. S. 166, 36 S.Ct. 514, 60 L.Ed. 937; Doullut & Co. v. United States, 268 U.S. 33, 45 S.Ct. 411, 69 L.Ed. 832. These were all cases where a moving vessel damaged the fixture; and it was held that a maritime tort was committed and that the admiralty court had jurisdiction to give redress. They demonstrate that attachment to the soil does not always prevail over the uses for which the structure is designed, and support the appellant's contention that Maloney sustained his injury upon "navigable waters." Jeffers v. Foundation Co., 85 F.(2d) 24 (C.C.A.2), is not to the contrary, for, as there pointed out, a bridge pier, unlike a beacon, is not an aid to navigation but rather an obstruction. It is also clear that Maloney's injury arose out of and in the course of his employment. Hence the first condition essential to coverage under the statute in question was satisfied.

Whether the second and third conditions to coverage have also been satisfied presents more difficult questions. Although the place of the accident brought it within the jurisdiction of admiralty over torts, it does not follow that Maloney was engaged in maritime employment. Grant Smith-Porter Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008. There a carpenter was injured while working upon an uncompleted vessel lying in navigable waters within the state of Oregon. His employment was nonmaritime, but admiralty would have awarded recovery for the tort done him except for the exclusive remedy afforded by the State Compensation Act (Consol.Laws N.Y. c. 67). Possibly a distinction might be taken between construction of a ship and construction of a lighthouse, and the latter work might be deemed maritime on the theory that it bears a more direct relation to navigation and commerce. Compare Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819, holding that repairs to a vessel are maritime employment and within the exclusive jurisdiction of admiralty. Yet the construction of a lighthouse would seem to be no more directly related to navigation and commerce than is the construction of a lightship for the United States, which was held to be nonmaritime employment in United States Casualty Co. v. Taylor, 64 F.(2d) 521 (C.C.A.4), certiorari denied 290 U.S. 639, 54 S.Ct. 56, 78 L.Ed. 555, or the removal of an obstruction to navigation, as in Millers' Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470. But, even if it be assumed that Maloney's employment was maritime, there remains the question whether the matter is of such local concern as to permit the application of state compensation laws. See Morrison, Workmen's Compensation And The Maritime Law, 38 Yale L.J. 472, 501, 502.

Prior to enactment of the Longshoremen's and Harbor Workers' Compensation Act the Supreme Court had held in a long line of cases, of which Southern Pacific Company v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451 Ann. Cas.1917E, 900, was the first that state workmen's compensation acts could not apply to an employee, such as a stevedore, injured upon navigable waters while engaged in a maritime service. Many of the cases are summarized in London Co. v. Industrial Comm., 279 U.S. 109, 49 S.Ct. 296, 73 L.Ed. 632. See, also, Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819; Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631. In another line of decisions the court had ruled that, "where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations, and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity." Sultan Ry. Co. v. Dept. of Labor, 277 U.S. 135, 137, 48 S.Ct. 505, 506, 72 L.Ed. 820. In passing the act in question, Congress had these decisions in mind (Crowell v. Benson, 285 U.S. 22, 39, 52 S.Ct. 285, 287, 76 L.Ed. 598) and abstained from occupying so much of the field as the states could legally enter. Whether or not the state law may be applied is often a difficult question. See Sunny Point Packing Co. v. Faigh, 63 F.(2d) 921 (C.C.A.9). Cf. Union Oil Co. v. Pillsbury, 63 F.(2d) 925 (C.C.A.9). On which side of the line a given case should fall can only be determined by comparing it with the Supreme Court decisions. Those which have held the matters involved to be of "merely local concern" and within the orbit of state laws are the following: Grant Smith-Porter Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; Millers' Underwriters' v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Rosengrant v. Havard, 273 U.S. 664, 47 S.Ct. 454, 71 L.Ed. 829; Alaska Packers' Ass'n v. Industrial Accident Comm., 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656; Sultan Ry. Co. v. Dept. of Labor, 277 U.S. 135, 48 S.Ct. 505, 72 L.Ed. 820. See, also, United States Casualty Co. v. Taylor, 64 F.(2d) 521 (C.C.A.4), certiorari denied 290 U.S. 639, 54 S.Ct. 56, 78 L.Ed. 555. The Rohde Case has already been stated. Although the contract was nonmaritime, decision was not rested wholly upon that ground. At page 477 of 257 U.S., page 158 of 42 S.Ct., 66 L.Ed. 321, 25 A.L.R. 1008, it was said that the rights and liabilities of the parties "had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential." In the Braud Case a diver was drowned while sawing off an underwater obstruction to navigation. In referring to this case in London Co. v. Industrial

Comm., 279 U.S. 109, at page 121, 49 S. Ct. 296, 299, 73 L.Ed. 632, Chief Justice Taft remarked that "it was very like in its relation to the state law to the Rohde Case," and that "the employment was not maritime." Compare Colonna's Shipyard v. Lowe, 22 F.(2d) 843, 844 (D.C.E.D. Va.); Morrison, supra, 38 Yale L.J. 472, 497. The state law was applied because the matter was of merely local concern. We cannot see why the case at bar is any less local. In the Rosengrant Case the injured man was employed as a lumber inspector and checker and was aboard a moored vessel tallying lumber which was being unloaded from a barge alongside. The Alaska Packers Case involved an employee who was standing on shore endeavoring to push à stranded boat into navigable water. In the Sultan Railway Case the employees were engaged in making up booms of logs in a river. In the Taylor Case the Longshoremen's Act was held inapplicable to a workman injured while engaged in the construction of a United States lightship, which had been launched and was very nearly completed. In the light of these authorities we think the decision below was right. Maloney's employment and activities would seem to us to be as "local" as those of the diver in the Braud Case or the workman on the lightship in the Taylor Case. If state regulation of the employer-employee relationship was permissible there, we think it is equally permissible here. We cannot see that regulation by local rules will work any material prejudice to the characteristic features of the general maritime law or interfere with its uniformity.

The decree is affirmed.