CORDOVA FISH & COLD STORAGE COMPANY and Underwriters Lloyds of London, Appellants,

v.

Gerald T. ESTES and Alaska Workmen's Compensation Board, composed of B. G. Johnson, Chairman, A. D. Wallace, member, and L. H. Shaffer, member, Appellees.

No. 126.

Supreme Court of Alaska.

Jan. 26, 1962.

Rehearing Denied April 11, 1962.

———◇———

F. M. Doogan (of Faulkner, Banfield, Boochever & Doogan), Juneau, for appellants.

Ralph E. Moody, Atty. Gen., and John E. Havelock, Asst. Atty. Gen., for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Estes, a crab fisherman, suffered a back injury at the end of a fishing day while moving crab pots on the deck of a boat which was tied to a dock. The Alaska Industrial Board made an award under the Alaska workmen's compensation act,[1] finding that he had sustained a compensable injury arising out of the course of his employment with Cordova Fish & Cold Storage Company. On appeal to the superior court the Board's decision was affirmed. Cordova has appealed to this court—its principal point being that no relief could be given under the Alaska act because of the supremacy of maritime law.

1. Sections 43–3–1 to 43–3–39, ACLA 1949, as amended. This statute was in effect at the time of the injury in 1958. It has since been superseded by a new law, SLA 1959, ch. 193.

■ The root of the problem is found in the Jensen [2] case, decided by the Supreme Court in 1917. It was held that New York's Workmen's Compensation Act, McKinney's Consol.Laws c. 67, could not constitutionally be applied to a stevedore fatally injured on board ship while engaged in unloading cargo at a New York pier. The court announced the doctrine that state legislation can have no application if it "works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." [3] Since Jensen's injuries were maritime, the locus being on navigable waters, and since the nature of his employment was maritime, it was determined that application of the state compensation act would prejudice the uniformity of maritime law.

The court recognized, however, that there would be instances where the general maritime law may be affected by state legislation.[4] The first of these, as applied to workmen's compensation, was exemplified in the Rohde [5] case, decided in 1922. Applying a doctrine previously worked out in a death act case,[6] the Supreme Court held that the uniformity of maritime law is not prejudiced by application of a state law to maritime employment which is local in character, and that work is deemed local if it has no direct relation to navigation or commerce.[7] Thus emerged the "maritime but local" doctrine, following which a con-

siderable body of case law developed classifying borderline cases one way or the other.[8]

An illustrative case involving an Alaskan fisherman, where the employment was held to be of local concern, is Alaska Packers Ass'n v. Marshall [9], decided by the Court of Appeals for the Ninth Circuit in 1938. Two men were employed to fish for the company, which included operation of a fishing vessel. In addition, they had shoreside duties such as working in the cannery, conditioning the fishing vessels, and mending fishing gear. They were customarily on the boat fishing from Monday to Saturday during the salmon run.[10] They ate and slept on the vessel, and approximately once every twenty-four hours delivered their catch to a lighter anchored on the fishing grounds. While they were engaged in fishing, and had been away from shore for several days, the vessel was destroyed in a storm and both men were drowned.

The question for determination was whether the state compensation act applied.[11] The court recognized the dual character of the employment: in one aspect, local, because the men never sailed their boats beyond a few miles from the cannery to which their catch was taken; and in another aspect, maritime, because they sailed their boats in navigable waters. But the court found from considering the details of the employment contract that the gathering of the cannery's raw materials was a mere incident in the canning process and there-

2. Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

3. Id., 244 U.S. at 216, 37 S.Ct. at 529 (61 L.Ed. at 1098).

4. Id., 244 U.S. at 216, 37 S.Ct. at 529 (61 L.Ed. at 1098).

5. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008 (1922).

6. Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 66 L.Ed. 210, 214 (1921).

7. Grant Smith-Porter Ship Co. v. Rohde, supra note 5, 257 U.S. at 475–476, 42 S.Ct. 157 (66 L.Ed. at 324).

8. A selection of "maritime but local" cases is found in 2 Larson, Workmen's Compensation Law § 89.22 (1952), and in Davis v. Dept. of Labor, 317 U.S. 249, 253 n. 2, 63 S.Ct. 225, 87 L.Ed. 246, 249 (1942).

9. 95 F.2d 279 (9th Cir. 1938).

10. The period of the salmon run at this time was about 20 days.

11. The California act, rather than that of Alaska, was relied upon, presumably since the contract of employment was made in California. See Alaska Packers Ass'n v. Indus. Acc. Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

fore local in character. It was held that there was a single locus of employment and that there was no disturbance of uniformity of employer-employee relationship if certain portions of the contract were to be regarded as maritime, and yet the employment status were to be controlled by state law. The court determined that the regulation of the rights, obligations and consequent liabilities of the company to the two men, by application of state law, would not work prejudice to any characteristic feature of maritime law. It was held, in fact, that "To deny compensation *would work deep prejudice to the compensation system,* now so widely accepted as 'necessarily' an incident to such creative service as supplying the material to this food canning plant, and which enlightened statesmanship, with its eyes opened to modern concepts of human relations, has enacted in so many of the states." [12] Application of the state compensation act was held not barred by the Jensen doctrine.

We hold that the control of Estes' status as an employee comes within the principles of the Marshall case. Estes had been hired by Joseph Balestrieri, operator of Cordova Fish & Cold Storage Company, to fish crab on a percentage basis. Balestrieri furnished the boat and repairs and hired and paid a helper. The crabbing was a daytime operation conducted in the inland waters of the state within a couple of hundred yards to a mile from shore. It consisted of Estes taking the boat out, baiting the pots and submerging them, and returning to the City of Cordova for the night. The next morning he would again take the boat out and lift the pots, remove the crabs, and rebait the pots and again submerge them. He then returned to the shore-based cannery with the crab. It took twenty minutes to get to the crab pots, six to eight hours lift-

ing pots, and from 45 minutes up to an hour to return. In addition to the fishing, when bait was not available for purchase, Estes dug it on the land. This was an essential part of the crabbing operation.

In Marshall the court found that the fishing incidents of the employment were by function and distance local to the cannery and part of the canning enterprise.[13] The same situation exists here. The primary function of Estes' employment was to provide raw materials for the cannery operation. That the fishing was necessarily local to Cordova's plant is shown by the fact that the catch could not be sold to any other cannery. The distance was local since the fishing was done within a relatively short distance from the cannery. Estes had a shore duty, since at times he was required to dig bait—a necessity if crab were to be caught.

Considering these aspects of employment, predominantly local in character, we find that the state has a primary and vital concern with Estes' status and well-being. If there is any maritime interest involved, it is slight or marginal. We do not see how the operation of the state compensation system can cause any undesirable disuniformity in the scheme of maritime law.[14]

In support of its argument that maritime law provides the exclusive remedy, Cordova cites Parker v. Motor Boat Sales,[15] decided by the Supreme Court in 1941. This case concerned an employee of a store which sold boats and maritime supplies. He was hired primarily as a janitor and porter, and his work was almost entirely on land. He went along with another employee in a small boat in a river to test an outboard motor, and was drowned when the boat capsized. The Supreme Court affirmed an award made under the Longshoremen's and Harbor Workers' Act,[16] reversing the court

---

12. Alaska Packers Ass'n v. Marshall, supra note 9, 95 F.2d at 283.

13. Id., 95 F.2d at 281–282.

14. Cf. Kossick v. United Fruit Co., 365 U.S. 731, 740, 81 S.Ct. 886, 6 L.Ed.2d 56, 63 (1961).

15. 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941), reversing 116 F.2d 789 (4th Cir. 1941).

16. 44 Stat. 1424 (1927), 33 U.S.C.A. § 901 (1957).

of appeals. That court had held that the decedent's employment was so local in character that the state compensation act, rather than the federal act, was applicable.[17] The Supreme Court stressed that the maritime character of the employment was not to be determined by the habitual performance of duties on land, but by the activity in which decedent was engaged at the time of the accident, that is, riding in a boat on a navigable river.[18]

This decision would appear to have done away with the "maritime but local" doctrine, and to have established the rule that states could not validly provide relief for an injury occurring on navigable waters.[19] It would support Cordova's argument on this appeal, if it had been the last word on the subject by the highest court. But it was not. In 1942 the Supreme Court decided Davis v. Dept. of Labor,[20] which involved a steel worker who, while engaged in dismantling a bridge across a navigable river, fell into the river and was drowned. This time the Supreme Court held that the state compensation act could be applied. It based its decision not on the "local concern" exception to maritime employment, but on a new concept. It found that certain employees occupied "that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation."[21] This was denominated as a "twilight zone in which the employees must

have their rights determined case by case, and in which particular facts and circumstances are vital elements."[22] Relying on the fact that the decedent was, as a matter of actual administration, protected under the state compensation act, and that there was no conflicting process of administration since no action had been taken under the Longshoremen's and Harbor Workers' Act, the court found the facts of the case did not overcome the strong presumption of constitutionality in favor of the state statute.

The significance of this case, it has been said, "lies in its obvious attempt to set up a means of escape for the difficulties in drawing a line between State and Federal Authority under the doctrine of the Jensen case."[23] Its practical effect, it has been said elsewhere, is to permit an employee in a situation such as in Davis to recover either under the federal act or a state statute[24], and to resolve all borderline cases "in favor of coverage by the first act under which application is made by the claimant."[25] If that is what Davis holds, it would seem clear that Estes' employment would fall within the twilight zone and that state compensation coverage would be valid. As a matter of actual administration, Estes is in fact protected by the Alaska statute, the Alaska Industrial Board having found the act was intended to include commercial fishermen such as Estes.[26]

17. Motor Boat Sales, Inc. v. Parker, 116 F.2d 789 (4th Cir. 1941).

18. Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 247, 62 S.Ct. 221, 86 L.Ed. 184, 189 (1941).

19. Gilmore & Black, The Law of Admiralty at 348 (1957); 2 Larson, Workmen's Compensation Law § 89.23(b) at 413 (1952).

20. 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).

21. Id., 317 U.S. at 253, 63 S.Ct. 225 (87 L.Ed. at 248).

22. Id., 317 U.S. at 256, 63 S.Ct. 225 (87 L.Ed. at 250).

23. Moores' Case, 323 Mass. 162, 80 N.E. 2d 478, 480 (1948), aff'd, Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 (1948), approved Baskin v. Industrial Accident Commission, 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523 (1949).

24. Justice Frankfurter's concurring opinion in Davis v. Dept. of Labor, 317 U.S. 249, 259, 63 S.Ct. 225, 87 L.Ed. 246, 252 (1942).

25. 2 Larson, Workmen's Compensation Law § 89.24, at 414 (1952).

26. The act was clearly intended to encompass the fishing industry. § 43-3-5 ACLA 1949 permitted one entitled to compensation to have a lien against the employer's property. As an example of what the statute meant, it was stated: "in the case of an employee injured or killed while engaged in fishing or in the packing, canning, or salting of fish, or

There was no conflicting process of administration between federal and state law, since Estes sought relief only under the Alaska act. Under these circumstances, together with those relating to Estes' employment, we could rely as the Supreme Court did in Davis on the presumption of constitutionality in favor of Alaska's statute as it pertains to Estes, and affirm the Board's determination on that ground.

Cordova argues, however, that Estes was a seaman, and that the twilight zone doctrine relates only to overlap between the Longshoremen's and the Harbor Workers' Act and state compensation statutes, and not between state acts and seamen's remedies. That proposition appears to be supported by a 1948 decision of the Court of Appeals for the First Circuit.[27] In 1956 the opposite view was expressed by a state court which held that the twilight zone approach was not limited to longshoremen, but included seamen as well.[28]

It is probably unnecessary for us to pass upon that question. We do not perceive any real difference between (1) the connection that must exist between a state and employment involving some maritime interest to come within the twilight zone, and (2) the connection that must exist between a state and such employment to come within the maritime and local concept. The general idea appears to us to be the same: a recognition of the right of a state to confer the kind of protection it thinks wise on persons or employments in which it has a legitimate interest. In a realistic sense, that interest is just as significant where Estes is concerned as it is for other employees of Cordova who work ashore in the cannery.[29] We find that all of the circumstances of the case point to an ac-

commodation favoring application of the state compensation act, and that this will not interfere with the true demands of maritime law.

The second point raised by Cordova is that Estes cannot recover under the Alaska compensation act in any event because no employer-employee relationship existed between Cordova and him. The Board found otherwise on the basis that Cordova had the right to control, the right to hire and fire, and that it furnished the tools Estes needed, that is, the boat and the pots.

The pertinent statutory provision which was in effect at the time of injury reads as follows:

Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this Act. The term "independent contractor" shall be taken to mean, for the purposes of this Act, any person who renders service, other than manual labor, for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished.[30]

This means that one is to be regarded as an employee if the principal has the right to control the details of the work. It is clear from the Board's decision that it had evidence before it on the four principal factors showing right of control, namely: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) the right to fire.[31] The findings of the Board showed it considered evidence that Balestrieri hired and paid a helper for Estes; that the man-

other branch of the fish industry, the lien shall extend to the entire packing, fishing, salting or canning plant or establishment and all property used in connection therewith; * * *."

27. Gahagan Const. Corp. v. Armao, 165 F.2d 301, 304 (1st Cir. 1948), cert. denied, 333 U.S. 876, 68 S.Ct. 905, 92 L. Ed. 1152 (1948).

28. Beadle v. Mass. Bonding & Ins. Co., 87 So.2d 339 (La.App. 1956).

29. See 2 Larson, Workmen's Compensation Law § 89.30 (1952).

30. Section 43-3-9 ACLA 1949.

31. 1 Larson, Workmen's Compensation Law § 44.00 (1952).

ner of payment was on a percentage basis; that the employer furnished the boat, repairs and crab pots; and that Balestrieri fired Estes on one occasion. From this evidence the Board determined the employer-employee relationship did exist. Its determination should not be reversed unless there was an abuse of discretion.[32] We perceive none. The finding that the employer-employee relationship existed between the parties is supported by the evidence.

The judgment is affirmed.

AREND, J., concurs in the result.

32. "Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Alaska Administrative Procedure Act, SLA 1959, ch. 143, art. VII, § 25(2) [§ 2A–12–25 ACLA Cum.Supp. 1959.]