**Wilbur G. ANDERSON, Appellant,**

v.

**ALASKA PACKERS ASSOCIATION; Alaska Pacific Assurance Company; Alaska Workers' Compensation Board, Appellees.**

**No. 5101.**

Supreme Court of Alaska.

Nov. 13, 1981.

the Constitution of Alaska.

James F. Vollintine, Anchorage, for appellant.

Charles P. Flynn, Burr, Pease & Kurtz, Inc., Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and COOKE, Superior Court Judge.*

---

\* Cooke, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The superior court affirmed the Board's decision upon the ground that there was substantial evidence supporting its conclusion that Anderson was an independent contractor. The court's decision did not address the question of exclusive federal jurisdiction, although the is-

## OPINION

BURKE, Justice.

This is an appeal from a final judgment of the superior court affirming a decision of the Alaska Workers' Compensation Board. The Board's decision denied an injured seaman's claim for benefits under the Alaska Workers' Compensation Act, AS 23.30.-005–.270. We affirm, having concluded that the claim is one subject to the exclusive jurisdiction of the United States.

Appellant Wilbur G. Anderson, a commercial fisherman, was injured on June 17, 1977, when he became entangled in a winch aboard the *Crane*, a purse seine vessel owned by Alaska Packers Association. Anderson, the captain of the vessel, was operating the *Crane* under a lease agreement with Alaska Packers. The injury occurred while the vessel was fishing in navigable waters, approximately one mile from Chignik Lagoon, a small coastal village in southwestern Alaska.

Anderson filed a claim against Alaska Packers and its insurance carrier, Alaska Pacific Assurance Company, contending that he was an employee of Alaska Packers and, therefore, entitled to compensation benefits under the Alaska Workers' Compensation Act. The Alaska Workers' Compensation Board ruled that Anderson was an independent contractor, rather than an employee of Alaska Packers, and denied his claim. On appeal to the superior court, the Board's decision was affirmed. This appeal followed.[1]

### I

The United States Constitution, article III, section 2, provides that "[t]he judicial power [of the federal government] shall extend to all cases ... of admiralty and

sue was raised in a timely fashion and discussed at oral argument. The Board, in its decision, did mention this issue, but the Board, like the superior court, apparently concluded that it had jurisdiction to consider Anderson's claim on the strength of our holding in *Cordova Fish & Cold Storage Co. v. Estes*, 370 P.2d 180 (Alaska 1962).

maritime jurisdiction ...." Section 1333 of title 28 of the United States Code gives the federal district courts "original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Gilmore and Black define admiralty jurisdiction as extending

> to all waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable in interstate or foreign water commerce, whether or not the particular body of water is wholly within a state, and whether or not the occurrence or transaction that is the subject matter of the suit is confined to one state.

G. Gilmore & C. Black, The Law of Admiralty § 1–11, at 32 (2d ed. 1975) (footnote omitted).

The policy behind the grant of exclusive jurisdiction is to ensure a nationally uniform system of maritime law. *The Lottawanna*, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654, 662 (1874), *cited with approval in Moragne v. States Marine Lines*, 398 U.S. 375, 402, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339, 357 (1970).

The United States Supreme Court recently had occasion to discuss the interrelationship of state compensation laws and the exclusive federal admiralty jurisdiction. Justice Brennan wrote for a unanimous court in *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed. 458 (1980) that:

> The evolution of the law of compensation for workers injured in maritime precincts is familiar. In 1917, *Southern Pacific Co. v. Jensen*, 244 U.S. 205 [37 S.Ct. 524, 61 L.Ed. 1086] (1917), declared that States were constitutionally barred from applying their compensation systems to maritime injuries, and thus interfering with the overriding federal policy of a uniform maritime law. Subsequent decisions invalidated congressional efforts to delegate compensatory authority to the States within this national maritime sphere. *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149 [40 S.Ct. 438, 64 L.Ed. 834] (1920); *State of Washington v. W. C. Dawson & Co.*, 264 U.S. 219 [44 S.Ct. 302, 68 L.Ed. 646] (1924). At the same time, the Court began to narrow the *Jensen* doctrine by identifying circumstances in which the subject of litigation might be maritime yet "local in character," and thus amenable to relief under state law. *Western Fuel Co. v. Garcia*, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); *Grant Smith-Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922). And, in 1927, Congress was finally successful in extending a measure of protection to marine workers excluded by *Jensen* by enacting a federal compensation law—the Longshoreman's and Harbor Workers' Compensation Act [LHWCA], 33 U.S.C. § 901 *et seq.* That statute provided, in pertinent part, that "[c]ompensation shall be payable [for an injury] ... occurring upon the navigable waters of the United States ... if recovery ... through workmen's compensation proceedings may not validly be provided by State law."

*Id.* at 717, 100 S.Ct. at 2435, 65 L.Ed. at 458.

Excluded from the coverage of the LHWCA at their own request, *see* Gilmore & Black, *supra*, at 427, were masters or members of the crew of vessels, 33 U.S.C. § 902(3), as these "seamen" were covered by the traditional maritime remedies of maintenance and cure, the Jones Act (46 U.S.C. § 688), and liability for unseaworthiness of a vessel. These divisions between persons doing similar work, or doing work subject to characterization as being in one or more categories, engendered questions in the courts in the years following the *Jensen* decision. Concerning those covered by the LHWCA, the *Sun Ship* court spoke of three "jurisdictional spheres":

> At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall under the LHWCA. "Maritime but local" injuries "upon the navigable waters of the United States," 33 U.S.C. § 903(a), could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—

albeit within the range of federal admiralty jurisdiction—were remediable only under state law.

*Sun Ship,* 447 U.S. at 719, 100 S.Ct. at 2436, 65 L.Ed. at 462.

The use of the term "sphere," as opposed to a term denoting precise boundaries between federal and state jurisdiction, was appropriate because, as the court recognized, "the boundary at which state remedies gave way to federal remedies was far from obvious in individual cases." *Id.* at 718, 100 S.Ct. at 2435, 65 L.Ed. at 461. The difficulties led the court to establish "a regime of concurrent jurisdiction," *id.,* in the "twilight zone" between federal and state compensation programs. *Davis v. Dept. of Labor,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). The high court has not created a twilight zone between the state acts and the traditional seaman's remedies, Gilmore & Black, *supra,* at 434, but the commentators see little reason why seamen should not also be entitled to the benefits of a twilight zone theory of jurisdiction. *Id.* at 434 n.335; 4 A. Larson, The Law of Workmen's Compensation § 90.41 (1980).

It seems apparent that Anderson is indeed a "seaman" within the meaning that term has come to have. *See Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir. 1959); 4 A. Larson, *supra,* § 90.21. Anderson is also plainly excluded from the coverage of the LHWCA as a master or member of the crew of the *Crane.* 33 U.S.C. § 902(3). We find it unnecessary to determine whether there is a twilight zone between the seamen's remedies and the workers' compensation system because we find Anderson's employment "on his vessel in navigable waters is in 'clear daylight' ..." *Alaska Indus.*

*Bd. v. Alaska Packers Ass'n,* 186 F.2d 1015, 1017 (9th Cir. 1951).

As noted, the twilight zone was created because of the difficulty encountered in determining when an injury was of a "maritime but local" nature. 4 A. Larson, *supra,* § 89.51, at 16–258 to 16–259. The cases in the area of local concern centered around activities with a close connection to the land, and not on persons engaged in traditional maritime occupations and tasks. Thus, in *London Guarantee & Accident Co. v. Indus. Accident Comm'n,* 279 U.S. 109, 49 S.Ct. 296, 73 L.Ed. 632 (1929), the court refused to apply the local concern exception to the claim on behalf of a seaman engaged in an effort to board a boat that had broken loose from its mooring less than a mile from shore. Though the decedent was employed only on vessels that operated within five miles of the shore for pleasure fishing, it was held that the state could not constitutionally make a compensation award. *Id.* at 125, 49 S.Ct. at 300, 73 L.Ed. at 637.

Anderson seeks to avoid a similar holding by citation of our decision in *Cordova Fish & Cold Storage Co. v. Estes,* 370 P.2d 180 (Alaska 1962). *Estes* relied on the "maritime but local" exception to the *Jensen* rule, and the injured claimant there was engaged in moving crab pots on the deck of a boat tied to a dock. *Id.* In view of the *London Guarantee* holding,[2] we see no way to extend *Estes* to the injury that occurred to Anderson while he was actually engaged in fishing on navigable waters.

We note that other cases in which the local concern doctrine was invoked to provide a state remedy for an injury within the

2. While it has been suggested several times since the *Jensen* case was decided that the Court had abandoned the principles stated there, *e. g.,* Note, *Has the Jensen Case Been Jettisoned?,* 2 Stan.L.Rev. 536 (1950), the case instead has "a tenacity which refuses to acquiesce in occasional contemporary reports of its final rejection ...." *Flowers v. Travelers Ins. Co.,* 258 F.2d 220 (5th Cir. 1958), *cert. denied,* 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959). Thus, in *Askew v. Am. Waterways Operators, Inc.,* 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), the court noted its prior statement that "Jensen and its progeny mark isolated instances where 'state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system,'" *id.* at 338, 93 S.Ct. at 1598, 36 L.Ed.2d at 289, and stated that such instances occur with respect "to suits relating to the relationship of vessels, plying the high seas and our navigable waters, and to their crews." *Id.* at 344, 93 S.Ct. at 1601, 36 L.Ed.2d at 293. We hold here that Anderson's case comes within the Court's description of Jensen's applicability.

admiralty jurisdiction involve facts, like *Estes*, with a closer connection to land-based activity than to traditional maritime work. See cases cited in 4 A. Larson, *supra*, § 90.30, at 16–352 n.70. Where the facts instead show a claimant engaged in wholly maritime work, the courts have declined to lengthen the shadow of the twilight zone, and have remitted the claimants to their federal remedies. *E. g., Bearden v. Leon C. Breaux Towing Co.*, 365 So.2d 1192 (La. App.1978); *Valley Towing Co. v. Allen*, 236 Miss. 51, 109 So.2d 538 (1959). We do likewise here.

The superior court's judgment is AFFIRMED.

COMPTON, J., not participating.